Dear Mayor McGehee:
Reference is made to your recent request for an Attorney General's opinion regarding the use of revenues generated by an existing ad valorem tax. It is our understanding that the City of Bogalusa is contemplating using certain tax revenues for the purpose of paying debt service on certificates of indebtedness which may be issued in connection with the merger of its a municipal pension fund established for firefighters into a state retirement system.
According to your correspondence, the City is currently collecting a 3.10 mill tax (the "Tax"), pursuant to authority granted by the voters at an election held on November 3, 1992. The proposition approved by the electorate provides:
 "Shall the City of Bogalusa, State of Louisiana (the "City"), continue to levy and collect a special tax of three and one-tenth mils on all property subject to taxation in the City for a period of ten years, beginning with the year 1993 and ending with the year 2002, for the purpose of providing additional revenues for the Firemen's Pension and Relief Fund of the City?"
(Emphasis added).
It is our understanding that in 1981 the City entered into a Merger Agreement with the Board of Trustees of the Firefighters' Retirement System (the "State System") pursuant to which the City's previously existing Firemen's Pension Fund was merged into the State System. Pursuant to that Merger Agreement, the City paid the State System a lump sum payment of approximately $155,000 and also agreed to make payments on an amortized balance, together with interest of 7%, through January 1, 2010.
Although the Firemen's Pension Fund no longer exists, the City is currently maintaining its "Firemen's Pension and Relief Fund for the City of Bogalusa" from which it makes payments to certain retirees and survivors.
The City would now like to merge the "Firemen's Pension and Relief Fund for the City of Bogalusa" into the State System, and at the same time, the City would like to refinance its obligations to the State System under its 1981 Merger Agreement. To do so, the City will need to borrow approximately $900,000 to finance the merger of its existing pension fund into the State System, and approximately $1,045,000 to refinance its obligation under the 1981 Merger Agreement.
It is contemplated that this proposed debt would be payable from the excess of the City's annual revenues of subsequent years above statutory, necessary and usual charges in accordance with La. RS 39:1447 and 33:2922. Although the revenues generated by the Tax will not be formally pledged to the State System, the City would like to use those revenues to pay principal and interest on its proposed indebtedness. In this regard, the City has requested our advice as to whether the proceeds of the Tax (including the proceeds of any renewal of the Tax) can be used by the City to make principal and interest payments on debt incurred to finance and or refinance payments under merger agreements with the State System.
This office has long been of the opinion that ad valorem tax proceeds can only be used in the manner set forth in the proposition approved by the electorate. Attorney General's Opinions Nos. 98-369, 98-287, 97-434, 96-494, 88-601 and 74-984. We note that RS 39:704 pertinently provides:
 "The proceeds of any special tax shall constitute a trust fund to be used exclusively for the objects and purposes for which the tax was levied."
Additionally, the jurisprudence of this state provides that special tax authorizations must be strictly construed. Hemler v.Richland Parish School Board, 76 So. 585 (La. 1917); Watkins v.Ouachita Parish School Board, 136 So. 591 (La. 1931); Hodnettv. Monroe City School Board, 277 So.2d 598 (La.App. 2nd
Cir. 1972) and Brock v. St. James Parish Council,407 So.2d 1265 (La.App. 4th Cir. 1981), writ denied. In Hemler, at pg. 586, the Supreme Court stated:
 "It is a familiar principle that laws authorizing taxation . . . are in derogation of common rights; and therefore are to be strictly construed this is especially true of laws authorizing special taxes."
The above quoted proposition only contemplates use of the revenues generated by the Tax for a pension fund maintained by the City. It is therefore our opinion that use of the Tax proceeds to pay debt service on obligations incurred in connection with mergers of City pension funds into the State System, without the authorization of the electorate, would violate the legal principles set forth in the above-referenced authorities.
Of course, the City of Bogalusa could ask the voters of Bogalusa to rededicate the Tax proceeds at a future election. Please note that a rededication election would have to be approved by the State Bond Commission in accordance with La. RS39:1410.61.
We trust the foregoing to be of assistance. Please do not hesitate to contact this office if we can be of assistance in other areas of the law.
Yours very truly,
 RICHARD P. IEYOUB ATTORNEY GENERAL
 BY: JEANNE-MARIE ZERINGUE BARHAM 
Assistant Attorney General
JMZB/sam
cc: Mr. David Wolf Chief Michael Hemphill